**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

E.M.,

          Plaintiff,

    v.

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Civil No. 20-20350 (RMB)


**OPINION**

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion's reasoning.

**I.        STANDARD OF REVIEW**

When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "'more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Cons.*

1

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

## II.    FACTS

The Court recites herein only the facts that are necessary to its determination

on appeal. Plaintiff, who was born on April 9, 1962, was 53 years old on the alleged

onset date of October 26, 2016. [Docket No. 10 (referred to hereafter as "Plaintiff's

Brief"), at 2 (*citing* Docket No. 7 (hereafter the "Administrative Record" or "AR")), at

16, 314).] Plaintiff completed high school, can communicate in English, and "has

past relevant work [experience] as a manager/supervisor [in] accounts receivable."

[*Id.* (*citing* AR at 44, 27).] Plaintiff claims disability status, in part, arising from spine

disorder, asthma, degenerative joint disease (Baker's cyst and tear of the lateral

meniscus of the left knee), as well as rotator cuff tendinitis, recurrent headaches/

migraines, surgical history (including gall bladder removal and partial hysterectomy),

and mental health issues (including anxiety and an adjustment disorder). [*Id.* (*citing*

AR at 18-19).]

On October 22, 2019, Plaintiff appeared at a hearing before the Honorable

John Campbell, an Administrative Law Judge ("ALJ"), in Pennsauken Township,

New Jersey. [AR at 16.] The hearing was also attended by Plaintiff's attorney,

Richard L. Frankel, and impartial Vocational Expert Louis P. Szollosy. [*Id.*] On

November 21, 2019, the ALJ issued an unfavorable decision denying Plaintiff's

claim for social security benefits. [*Id.* at 28.] Plaintiff appealed the ALJ's decision

internally to the Appeals Council, but her appeal was denied on October 22, 2020.

[*Id.* at 5.] On December 28, 2020, Plaintiff filed a Complaint against the

Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), invoking the

jurisdiction of this Court. [Docket No. 1 ¶ 2.]

### III.     ALJ'S DETERMINATION

The ALJ determined that Plaintiff was not disabled for purposes of social

security benefits, finding that she could make an adjustment to her past relevant

work as a manager/supervisor in accounts receivable. [AR at 27.] After finding that

Plaintiff did not engage in substantial gainful activity since her alleged onset date of

October 26, 2016, the ALJ determined that Plaintiff had the following three "severe"

impairments that significantly limit her ability to perform basic work activities as

required by SSR 85-28:  spine disorders, asthma, and degenerative joint disease

(Baker's cyst and tear of the lateral meniscus of the left knee). [*Id.* at 18.] The ALJ

also discussed why he determined that several of Plaintiff's other alleged

impairments were not "severe" at Step Two, including a "slight tear in her rotator

cuff"/rotator cuff tendinitis, surgical history (including her gall bladder removal and

a partial hysterectomy), anxiety, and other mental health symptoms. [*Id.* at 18-21.]

When considering Plaintiff's mental health, the ALJ discussed each of the four

"paragraph B" criteria at length, finding that Plaintiff had only a mild limitation in

each of the broad four areas of functioning:  understanding, remembering, or

applying information; interacting with others; concentrating, persisting, or

maintaining pace; and adapting or managing oneself. [*Id.* at 19-20.]

At Step Three, the ALJ found that none of Plaintiff's impairments, or any

combination thereof, met or medically equaled the severity of an impairment listed at

20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.* at 21.] Before turning to Step Four,

the ALJ determined that Plaintiff retained the following residual functional capacity

("RFC") to perform light work with certain limitations:

> [S]he can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, knee[l], crouch, and crawl. She must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, dust, gases, odors, pulmonary irritants, and poor ventilation.

[*Id.* at 22.] The ALJ then determined that Plaintiff could perform her past relevant

work as a manager/supervisor in accounts receivable based on the testimony of

impartial Vocational Expert Louis P. Szollosy—who testified that the above

limitations in the RFC assessment would not preclude her ability to perform the

duties of that occupation as it is generally performed. [*Id.* at 27.] Thus, the ALJ

ultimately concluded, at Step Five in the sequential analysis, that Plaintiff was not

disabled for purposes of social security benefits. [*Id.* at 28.]

IV.     ANALYSIS

On appeal, Plaintiff asserts that two of the ALJ's findings, in particular, were

not supported by substantial evidence:  (1) the ALJ's consideration of Plaintiff's

migraines/headaches, fibromyalgia, anxiety/mental health, and side effects of

medication, including the ALJ's finding that such impartments and/or symptoms

were not "severe" at Step Two of the sequential analysis, as well as the ALJ's failure

to include additional limitations in the RFC assessment to account for the same; and

(2) by affording little weight to the medical opinions of two of Plaintiff's treating

physicians, Doctors John Wilkins and Michael Sabia.

> **A.**    **Plaintiff's Migraine Headaches, Fibromyalgia, Mental Health, and**
>
> **Medication Side Effects**

> **1.**    **Step Two Findings that Plaintiff's Challenged Impairments**
>
> **Were Not "Severe"**

Plaintiff's first challenge on appeal is that "[t]he ALJ erred where he found

Plaintiff's mental health and migraine headaches non-severe at Step Two," and

where he also found "that Plaintiff's fibromyalgia was not a medically determinable

impairment." [Plaintiff's Brief at 16.] It is true that "[t]he Step Two inquiry is a *de*

*minimis* screening device to dispose of groundless claims." [Plaintiff's Brief at 18

(*citing Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)).] However, it is

also true that the relevant inquiry at Step Two "is not how many severe impairments

exist . . . but whether the claimant has at least one severe impairment"—significantly

impacting an individual's ability to do basic work activities—"that justifies the ALJ

proceeding to the next step of the sequential evaluation process." [Docket No. 11

(referred to hereafter as "Commissioner's Brief"), at 15 (*citing* 20 C.F.R. § 404.1520).]

Here, the Court finds that the ALJ did determine that Plaintiff had several "severe"

impairments at Step Two before proceeding to Step Three, including her spine

disorders, asthma, and degenerative joint disease (Baker's cyst and tear of the lateral

meniscus of the left knee). [AR at 18.] The Court also finds that the ALJ's

determination that Plaintiff's challenged impairments were not "severe" at Step Two

is supported by substantial evidence. In his decision, the ALJ provided detailed explanations as to why he found each of these impairments to be not "severe," as defined under the social security regulations, including by citing the relevant evidence in the record that substantiated such findings.

For example, the ALJ acknowledged in his decision Plaintiff's testimony regarding her recurrent headaches and migraines, specifically, that "she experiences headaches five days per week that last about three hours" and also experiences "more serious migraine headaches one to three times per month with vomiting that last up to twenty-four hours." [AR at 19.] However, the ALJ also cited numerous sources of medical evidence of record that contradicted Plaintiff's testimony as to the severity of her headaches and/or migraines, including the following:

- Office Treatment Records from Lourdes Medical Associates, dated November 2017 through May 2017, which found no "neurological disturbance [and] diagnosed [Plaintiff's condition] as probable tension headaches" [AR at 19 (*citing* AR, Ex. 9F, pp. 18-20)];

- Office Treatment Records from Stephen Guido (DO), dated August 2018 through February 2019, where "the claimant has denied headaches" [*Id.* (citing AR, Ex. 21F, p. 14)]; and

- Hospital Records from Our Lady of Lourdes, dated September 2016 through May 2017, where "[i]maging of the claimant's head merely describes sinusitis" [*Id.* (citing AR, Ex. 8F, pp. 24-25)].

Because the medical evidence of record did not establish "evidence of symptomatic complaints, treatment, or neurological disturbance consistent with [Plaintiff's] testimony," the ALJ concluded that Plaintiff's migraines and headaches were not "severe" at Step Two, provided that "the evidence does not support a finding of more than minimal functional limitations due to headaches." [AR at 19.] Having reviewed the medical evidence relied upon by the ALJ, the Court is satisfied that the ALJ's findings are generally supported by the medical evidence cited.

Regarding Plaintiff's fibromyalgia, the ALJ properly considered the applicable regulations at SSR 12-2p, which outline the specific criteria required in a physician's diagnosis for purposes of determining that an individual has a medically determinable impairment of fibromyalgia for purposes of social security. The ALJ acknowledged that certain medical evidence in the record did reference Plaintiff's fibromyalgia, but neither "the physical consultative examiner" nor "an endocrinologist [who] referred to fibromyalgia" identified any specific trigger points or provided any relevant discussion of Plaintiff's fibromyalgia sufficient to establish that it was a medically determinable impairment consistent with the requirements of SSR 12-2p. [AR at 21 (*citing* AR, Exs. 9F, 10F, and 12F).] Thus, the Court finds that the ALJ's findings at Step Two regarding Plaintiff's fibromyalgia were supported by substantial evidence.

Next, regarding Plaintiff's mental health and anxiety, the Court takes notice that the ALJ dedicated a significant portion of his decision to explain his relevant

Step Two findings. The ALJ summarized Plaintiff's testimony "that she experiences severe anxiety arising from her son's struggle with substance abuse," which she reported is a daily symptom she experiences and for which she takes medication. [AR at 19.] The ALJ even acknowledged that "[t]he medical evidence of record describes a history of treatment for mental health issues." [*Id.*] However, the ALJ ultimately concluded after considering the four "paragraph B" criteria and the relevant evidence associated with each one, that the claimant's "mental impairment of an adjustment disorder with mixed depression and anxiety features does not cause more than minimal limitation" in her ability to perform basic work activities. [*Id.*]

In considering each of the "paragraph B" criteria, the Court finds that the ALJ provided detailed findings as to why he found Plaintiff to have only a mild limitation in each of the four broad areas of functioning. The ALJ explained his finding that Plaintiff had only a mild limitation in understanding, remembering, or applying information by relying on treatment records where Plaintiff was prescribed medication for "some complaints of fatigue in conjunction with anxiety," but which "did not describe significant cognitive deficits associated with anxiety or fatigue," as well as the fact that Plaintiff's psychiatric consultative examination, mental status examination, and regular mental health treatment records included no "significant findings of memory loss or cognitive disturbance." [AR 19-20 (*citing* AR, Exs. 5F, 13F, and 14F).] Similarly, the ALJ relied on the findings of Doctor Theodore Brown (PhD) from Plaintiff's psychiatric consultative examination—finding "overall

adequate presentation" and the only limitation of Plaintiff was her "inability to perform serial sevens"—in determining that Plaintiff had only a mild limitation in interacting with others and concentrating, persisting, or maintaining pace. [AR 20 (*citing* AR, Ex. 13F).] The ALJ concluded that the records pertaining to Plaintiff's mental health "do not provide significant insight into the claimant's mental status," but rather "merely describe refills of medication without evidence of serious emotional disturbance or consequential difficulties in concentration, focus, or attention span." [*Id.* (*citing* AR, Exs. 14F and 23F).]

With respect to the fourth broad area of functioning of managing or adapting oneself, the ALJ similarly explained his finding that Plaintiff had only a mild limitation by citing treatment records from December 2016 from Jefferson Health where Plaintiff "reported that medication effectively treated both anxiety and insomnia," as well as medical records showing that her blood pressure and cardiac function were under control. [*Id.* (*citing* AR, Exs. 6F, 9F, and 16F).] Finally, the ALJ also noted that "the record does not describe intensive psychiatric treatment such as inpatient admission, partial hospitalization, or emergency intervention for panic or acute anxiety," which is consistent with his Step Two findings that Plaintiff does not suffer from any "severe" mental health impairment. The Court finds that ALJ's "paragraph B" findings regarding Plaintiff's mental health are well-substantiated by the evidence of record, and thus, are supported by substantial evidence.

The Plaintiff also argues that the side effects of her medication should have

been found to be a "severe" impairment by the ALJ at Step Two, relying entirely on the medical opinions of the same two doctors she argues the ALJ improperly accorded less weight to in his analysis:  Doctors John Wilkins and Michael Sabia. As discussed below—*supra* Section (IV)(B)—the ALJ's rationale for affording these two medical opinions less weight is supported by substantial evidence. Therefore, the Court finds that it must follow that the ALJ's Step Two findings that Plaintiff's medication side effects were not "severe," an argument Plaintiff bases entirely on these two medical opinions, is also supported by substantial evidence.

### 2.    RFC Assessment

Plaintiff next argues that the ALJ erred "in failing to incorporate limitations in the RFC [assessment] consistent with Plaintiff's fibromyalgia, mental health . . . headache impairments[,] and with Plaintiff's [side effects to] medications. [Plaintiff's Brief 16-17.] Indeed, in making the RFC assessment, the ALJ did properly observe that he "must consider all of the claimant's impairments, including impairments that are not severe." [AR at 17 (*citing* 20 C.F.R. §§ 404.1520(e) and 404.1545; *also citing* SSR 96-8p.] In his decision, the ALJ provided an intelligent analysis in discussing the RFC assessment, including by offering a detailed explanation as to how he weighed the extensive, and sometimes conflicting, medical and non-medical evidence before him. However, having reviewed the ALJ's analysis in support of the RFC assessment [AR at 22-27], the Court agrees with Plaintiff that the ALJ did not include a relevant discussion regarding how the assessment appropriately captured those impairments

determined by the ALJ to be not "severe" at Step Two.

For example, in consideration of Plaintiff's alleged mental health symptoms, including anxiety, the ALJ acknowledged that "[t]he medical evidence of record describes a history of treatment for mental health issues." [AR at 19.] Then, in considering each of the "paragraph B" factors, the ALJ determined that Plaintiff's mental health symptoms caused only mild limitations in the four broad areas of functioning as discussed above—*supra* Section (IV)(A)(1). However, the ALJ also recognized in his decision that "the 'paragraph B' criteria are not a residual functional capacity assessment," and that Steps Four and Five of the sequential analysis "require[e] a more detailed assessment." [AR at 21.] This makes sense to the Court since the *de minimis* Step Two determination involves a distinct analysis than that required in formulating a claimant's RFC assessment. It may be the case that a Plaintiff has a mild mental health impairment that nonetheless warrants an appropriate limitation in the RFC assessment, even if that impairment is not "severe" at Step Two.

The issue here is that the ALJ did not revisit Plaintiff's "non-severe" impairments in analyzing the RFC assessment or explain his decision not to include any additional limitations to account for any such "non-severe" impairments and/or their resulting symptoms. The Court finds that the analysis provided by the ALJ in support of the RFC assessment, instead, is limited to a discussion mostly regarding why he did not include additional (or more restrictive) exertional limitations in the

13

RFC assessment to account for those physical impairments he determined to be "severe" at Step Two (*i.e.,* why Plaintiff's long medical history of spine disorders, asthma, and degenerative joint disease did not warrant additional or more restrictive limitations in the RFC assessment).

Plaintiff's migraines, headaches, and resulting symptoms provide another example. Although the ALJ determined that such impairments were not "severe" at Step Two, given the lack of medical evidence of neurological disturbance or instances of symptomatic complaints made to a treating physician, the ALJ still was nonetheless required to explain why he did not include additional limitations in the RFC assessment, considering Plaintiff's testimony and the evidence of record that may have corroborated her symptoms. Similarly, the ALJ determined at Step Two that Plaintiff's fibromyalgia was not "severe," but in doing so, acknowledged that "the medical evidence of record contains references to fibromyalgia." [AR at 21.] The ALJ's discussion of the RFC assessment does mention one report by Plaintiff in November 2016 where "she denied side effects of medication." [AR at 24.] However, other than this passing reference, the ALJ does not include in his analysis a discussion as to whether he considered including any additional limitations in the RFC assessment to account for Plaintiff's purported symptoms caused by any of the medications she was taking at the time. The Court is satisfied that there is substantial evidence of record to support his findings that such impairments were not "severe" at Step Two. However, the Court is unable to find that the ALJ's RFC assessment

considered Plaintiff's "non-severe" impairments, absent any relevant discussion.

On remand, the ALJ shall supplement his analysis in support of the RFC assessment to include a discussion as to whether additional limitations are warranted in light of Plaintiff's challenged impairments:  headaches/migraines, fibromyalgia, anxiety/mental health, and side effects of medication. It may be the case that the ALJ reaches the same result on remand and determines that the record, as a whole, does not support the addition of any such limitations or revisions to Plaintiff's RFC assessment. However, such an analysis is necessary for this Court to determine that the ALJ's RFC assessment meets the requirements of 20 C.F.R. § 404.1545 ("[w]e will consider all of your medically determinable impairments of which we are aware, including you medically determinable impairments that are not 'severe'"). The Court finds that in a case like this, where the ALJ himself acknowledged that there was conflicting medical opinion evidence regarding the extent of Plaintiff's symptoms, it is particularly relevant on appeal whether the ALJ took into consideration Plaintiff's "non-severe" impairments in formulating the RFC assessment. Thus, such an analysis by the ALJ will permit meaningful further review by this Court, if necessary.

**B.     The ALJ's Consideration of the Medical Opinion Evidence – Doctors Wilkins and Sabia**

Plaintiff's second main argument on appeal is that "the ALJ erred by improperly giving little weight to the opinions of Dr. John Wilkins, the Plaintiff's treating psychiatrist, and Dr. Michael Sabia, the [P]laintiff's treating pain

management doctor." [Plaintiff's Brief at 22.] However, as correctly stated by the

Commissioner, pursuant to 20 C.F.R. § 404.1527(d)(2), which is applicable to claims

filed before March 27, 2017 (like Plaintiff's), "the ALJ is not bound by the opinion of

a treating, examining, or reviewing physician." [Commissioner's Brief at 17.]

Instead, "if a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less

weight." [*Id.* (*citing Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996); *also citing Burke*

*v. Comm'r of Soc. Sec.*, 317 F. App'x 240, 243-44 (3d Cir. 2009)).]

The Court is satisfied that in affording these two medical opinions less weight,

the ALJ properly determined that such opinions were not supported by internal

clinical findings and were inconsistent with other medical evidence of record. In

discussing the opinion of Dr. Wilkins, the ALJ stated as follows:

> Dr. John Wilkins, a treating provider, submitted a medical source statement
> opinion that the claimant has marked mental functional difficulties and is
> unable to meet competitive standards in multiple functional areas. This
> opinion is accorded less weight. The assessments are not supported by
> exposition of the specific findings that would support this degree of limitation.
> Moreover, the limited available mental health treatment records do not
> establish cognitive, social, and intellection limitations that would support
> marked difficulties in each of these areas.

[AR at 20 (*citing* AR, Ex. 29F).] Similarly, the ALJ determined that like Dr.

Wilkins's findings, Dr. Sabia's findings were also not supported by or consistent with

Plaintiff's extensive medical treatment history of record:

> Dr. Sabia's opinion is entitled to less weight. His assessment of substantial
> exertional limitations is not supported by the longitudinal treatment record
> describing benign physical examination findings. In particular, there is no

> evidentiary support in the medical evidence of record for the use of an assistive device. Furthermore, the statement that the claimant needs daily but unpredictable rest breaks does not provide guidance into the claimant's ability to perform work activities on a regular and continuing basis. In addition, there is no explanation for the assessment of sensitivity to light and sound.

[AR at 26 (*citing* AR, Ex. 22F).] The Court also takes note that in discussing and weighing the medical opinion evidence before him, the ALJ summarized, at length, the conflicting opinions of several other doctors, including Dr. Juan Carlos Cornejo, Dr. Jacques Gulekjian, and Dr. Francis Buda, as well as dozens of medical treatment notes and records dating back to March 2011. [AR 22-27.] It is well within the discretion of the ALJ, in weighing such an extensive amount of information, to accord less weight to a particular medical opinion that is inconsistent with the record as a whole or an opinion that offers a conclusion based upon unsupported internal findings, as occurred here. Thus, the Court finds that the ALJ's decision to afford less weigh to the opinions of Doctors John Wilkins and Michael Sabia is supported by substantial evidence.

## V.    **CONCLUSION**

The Court concludes that a limited remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall explain whether additional limitation are warranted in the RFC assessment to account for Plaintiff's challenged "non-severe" impairments of headaches/migraines, fibromyalgia, anxiety/mental health, and medication side effects. For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings

consistent with the above analysis. An accompanying Order shall issue.


Date: <u>March 31, 2022</u>                                  <u>s/Renée Marie Bumb</u>
                                                                        Renée Marie Bumb
                                                                        U.S. District Judge